UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TERESA A. LARGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:14-CV-511-PLR-CCS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 14 & 15] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17]. Teresa A. Large ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On July 29, 2011, the Plaintiff filed an application for disability insurance benefits ("DIB"), claiming a period of disability which began July 28, 2011. [Tr. 47]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 63]. On April 30, 2013, a hearing was held before the ALJ to review determination of the Plaintiff's claim. [Tr. 25-38]. On June 21, 2013, the ALJ found that the Plaintiff was not disabled. [Tr. 8-24]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-3]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on October 30, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

I. **ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since July 28, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease, depression, and panic disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with no more than frequent use of her right lower extremity and no more than occasional use of her left lower extremity for the use of foot controls, pedals, and that sort of thing. She is also limited to no more than occasional climbing ramps/stairs, balancing, stooping, bending from the waist to floor, kneeling, crouching, or crawling, and no climbing ladders, ropes, or scaffolds. She is limited to work which would involve no more than simple and repetitive non-detailed tasks; public contact should be no more than casual and superficial; supervision should be direct and non-confrontation; and changes in the workplace should be infrequent and gradually introduced.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 10, 1959 and was 52 years old, which is defined as an individual "closely approaching advanced age" on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See Social Security Ruling 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 28, 2011, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 13-20].

## II. DISABILITY ELIGIBILITY

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be

3

considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); see also 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The plaintiff bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146

4

(1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence,

5

nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless. See Wilson, 378 F.3d at 546-47 (holding that an ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "'absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses'") (emphasis and internal quotation omitted) (quoting Connor v. U.S. Civil Serv. Comm'n, 721 F.2d 1054, 1056 (6th Cir. 1983)).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.     MEDICAL EVIDENCE

The Plaintiff was seen by Paul Johnson, M.D., at Knoxville Orthopaedic Clinic on February 4, 2010, for back and lower extremity radicular pain on the left side. [Tr. 240]. The Plaintiff had been experiencing back pain for some time due to a foraminal disc herniation at L5-S1 on the left side. [Id.]. Her back pain worsened in December 2009 after the Plaintiff, who worked as a nursing assistant, injured her back moving a patient. [Id.]. Since then, the Plaintiff

6

has experienced persistent pain in her back which radiates down to her buttock, thigh, and calf on the left side. [Id.]. An MRI was obtained on January 15, 2010, which showed a left paracentral disc protrusion that extend out into the foramen at the L5-S1 level and affected the Plaintiff's nerve roots. [Tr. 241]. The Plaintiff elected to treat her back pain by an epidural steroid injection on February 19, 2010. [Tr. 239, 241]. On March 5, 2010, the Plaintiff reported marked relief from lower extremity radicular pain. [Tr. 238]. As a result, Dr. Johnson felt that the Plaintiff was at maximum medical improvement and recommended that she return to see him on an as needed basis. [Id.].

On July 19, 2011, the Plaintiff presented to Families First Medical Group with complaints of lower back pain radiating to her lower left extremity. [Tr. 250-51]. The Plaintiff explained that her back hurts with heavy lifting and pops when turning, but eases with rest. [Tr. 250]. She received pain medication to treat her complaints. [Id.]. The Plaintiff returned nine days later with continued complaints of back pain that radiated down her left leg and popped with movement. [Tr. 248]. The Plaintiff reported a lack of health insurance and an intention to apply for disability benefits. [Id.].

On October 13, 2011, a consultative examination was performed by Eva Misra, M.D. [Tr. 400-03]. The Plaintiff reported back pain due to a workplace injury sustained in 2009 and a second back injury in June 2011. [Tr. 400]. She also complained of pain in her left leg and both knees. [Id.]. The Plaintiff ranked her pain as a seven on a scale of one to 10 and related morning stiffness of the right side of her body. [Id.]. A right knee x-ray revealed mild degenerative changes, but was negative for acute bony abnormality and joint effusion. [Id.].

Upon physical examination, the Plaintiff's gait, station, and mobility was normal, and she could get up from her chair and on and off the examination table without difficulty. [Tr. 401].

7

The Plaintiff's grip strength was 5/5, and she had no clubbing, cyanosis edema, or synovitis in her joints. [Id.]. The Plaintiff did, however, have decrease sensation with tuning form on her left foot, she was positive for straight leg raises on the left side, and experienced crepitus in both of her knees with flexion at 100 degrees. [Id.]. In addition, the Plaintiff's lumbar spine flexion was 65 degrees and extension and lateral flexion was 10 degrees. [Id.]. Dr. Misra diagnosed the Plaintiff with mild degenerative changes on the right knee, chronic back and left leg pain, and diabetes without evidence of end-organ damage. [Tr. 402].

Based upon the foregoing, Dr. Misra opined that in an eight-hour workday, the Plaintiff could occasionally lift, carry, and pull 10 pounds for one-third of the time, frequently lift and carry 10 pounds for one-third to two-thirds of the time, stand or walk with normal breaks for at least two hours, and sit without limitations. [Id.].

A month later, on November 9, 2011, Marcus Whitman, M.D., a non-examining, state agency physician, completed a form entitled "Physical Residual Functional Capacity Assessment," wherein he responded to a variety of short-answer and multiple choice questions regarding the Plaintiff's exertional limitations. [Tr. 404-11]. Dr. Whitman similarly opined the that the Plaintiff could lift or carry 10 pounds one-third of time, less than 10 pounds two-thirds of the time, stand or walk for at least two hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push or pull with unlimited ability within the foregoing limitations. [Tr. 405]. In addition, the Plaintiff could occasionally climb, stoop, kneel, crouch, and crawl, but never balance, and must avoid hazards and concentrated exposure to extreme cold, wetness, and humidity. [Tr. 406, 408].

Dr. Whitman explained that the Plaintiff's longitudinal history of back pain and the imaging studies of the Plaintiff's back and knee, along with Dr. Misra's examination, supported

8

Case 3:14-cv-00511-PLR-CCS   Document 18   Filed 12/30/15   Page 8 of 13   PageID #: 556

his findings as well as the Plaintiff's allegation of lower back and left leg pain. [Tr. 405, 409].

A second "Physical Residual Functional Capacity Assessment" was completed on March 13, 2012, by non-examining, state agency physician Jeanne Pedigo, M.D. [Tr. 437-45]. Therein, Dr. Pedigo opined that the plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand, walk, and/or sit for six hours in an eight-hour workday, push or pull with limited ability in her lower extremities, frequently crouch, and occasionally climb, balance, stoop, kneel, and crawl, but never balance. [Tr. 438-39]. Dr. Pedigo submitted that the limitations opined by Dr. Misra were overly restrictive based upon the Plaintiff's normal gait, mobility, and strength. [Tr. 443]. In addition, Dr. Pedigo found that the Plaintiff's reported daily activities, which included preparing simple meals, washing dishes, folding laundry, and shopping for groceries with assistance, did not support her allegations that she could only lift three to five pounds. [Tr. 442]. Dr. Pedigo reached this conclusion despite the Plaintiff's contemporaneous disclosure that she required frequent rests during said activities and had difficulty using her hands. [Id.].

V.  POSITIONS OF THE PARTIES

On appeal, the Plaintiff argues that the ALJ failed to explain the reason for the weight assigned to consultant examiner Dr. Misra, and non-examining, state agency physician Dr. Whitman. [Doc. 15 at 8-11]. Although the Plaintiff has been unable to obtain consistent medical treatment due to a lack of health insurance, she argues that the record contains objective medical evidence, including an x-ray and MRI, which corroborate her subjective complaints of back and knee pain and support the opinions rendered by Drs. Misra and Whitman. [Id. at 10].

The Commissioner responds that substantial evidence supports the ALJ's evaluation of

9

the opinion evidence of record. [Doc. 17 at 3-11]. Specifically, the Commissioner submits that the medical evidence of record, the Plaintiff's hearing testimony, and her daily living activities, discussed by the ALJ, were consistent with the finding that the Plaintiff was capable of performing light work. [Id. at 8]. Moreover, the Commissioner points out that neither doctor was entitled to any special degree of deference under the Administration's regulations. [Id.].

VI. ANALYSIS

At step 2 in the disability determination, the ALJ summarized Dr. Misra's findings, noting that she had concluded that the Plaintiff could perform work at the sedentary level. [Tr. 14]. The ALJ did not discuss the specifics findings articulated by Drs. Whitman or Pedigo, but noted that Dr. Whitman concurred that the Plaintiff was capable of sedentary exertion while Dr. Pedigo opined that the Plaintiff was capable of light exertion. [Id.]. In the residual functional capacity ("RFC") portion of the decision, the ALJ assigned "no weight" to Dr. Misra's opinion because she "failed to note any significant abnormalities" and "[h]er opinion is overly restrictive and is unsupported by the miniscule objective and clinical evidence of record and her own examination." [Tr. 17]. As to Dr. Whitman's opinion, the ALJ also assigned "no weight" to the opinion because it "is inconsistent with the benign evidence of records." [Id.]. Finally, the ALJ assigned "great weight" to Dr. Pedigo whose "opinion is consistent with the objective and clinical medical evidence of record and the claimant's hearing presentation and activities of daily living." [Id.].

In the absence of a treating source opinion deserving controlling weight, as is the case here, an ALJ is required to "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the

10

administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. § 404.1527(e)(2)(ii). ALJs are not "bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2 (July 2, 1996). Moreover, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

The factors applicable for assessing a treating physician's opinion remain guiding principles for evaluating opinions by other acceptable medical sources. That is, the degree of weight assigned to an opinion of a consultant or state agency physician is dependent on the supportability of the opinion, consistency of the opinion with other evidence in the record, specialization of the examining source, and other factors which may support or undermine the opinion. 20 C.F.R. § 404.1527(c)(3)—(6). "The better explanation a source provides for an opinion," and the more relevant evidence a source gives to support the opinion, "particularly medical signs and laboratory findings," the more weight the opinion will be given. § 404.1527(c)(3). In addition, "the more consistent an opinion is with the record as a whole, the more weight" the opinion will be entitled to. § 404.1527(c)(4).

Here, the Court finds the ALJ's explanation for declining to endorse the opinions of Drs. Misra and Whitman vague and undeveloped. While Dr. Misra may not have been due any "special degree of deference" as a one-time examiner, Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994), her opinion, in general, was entitled to more weight than the opinion of Dr. Pedigo who never examined the claimant. 20 C.F.R. § 404.1527(c)(1). That is not to say that Dr. Misra's opinion could not be properly rejected. In this instance, however, the reasons cited by

11

the ALJ do not provide a sufficient explanation for how the medical opinions were weighed.

For example, the ALJ rejected Dr. Misra's opinion because she noted no significant abnormalities. While making some normal examination findings, Dr. Misra also assessed that the Plaintiff had degenerative changes in her knees, decreased sensation with the tuning fork to her left foot, positive straight leg raises on her left side, abnormal lumbar spine flexion, and crepitus in both knees. Therefore, Dr. Misra concluded that the Plaintiff had some abnormalities that affected her exertional limitations. The ALJ also noted that Dr. Misra's opinion was inconsistent with the other medical evidence of record but fails to cite which evidence contradicts the opinion.

The ALJ likewise rejected Dr. Whitman's opinion because it is "inconsistent with the benign evidence of record" but leaves the reviewer wondering what benign evidence the ALJ is referring to. While the ALJ summarized some of the medical evidence at step 2, he provides no explanation in the RFC portion of the decision for finding said evidence corroborative of Dr. Pedigo's less restrictive opinion but contrary to Drs. Whitman's or Misra's opinions. In other words, the ALJ's discussion provides no more support for crediting Dr. Pedigo's opinion than it does for discrediting Drs. Misra's and Whitman's opinions. While Dr. Pedigo's opinion is clearly at odds with Drs. Misra's and Whitman's, there is no meaningful explanation for how the ALJ reconciled the competing opinions.

The Court is cognizant that the medical records presented are few and there exists gaps in the Plaintiff's treatment.[1] However, this also increases the significance of the medical opinions

---

[1] In this regard, the Court also notes the Plaintiff's allegation that she could not afford treatment due to a lack of health insurance. Social Security Ruling 96-7p cautions adjudicators from drawing adverse inferences from a claimant's failure to purse regular treatment without first considering the claimant's explanation for the failure, such as an inability to afford treatment or a lack of access to free or lost-cost medical services. 1996 WL 374186, at *7-8 (July 2, 1996).

offered in this case. Drs. Misra, Whitman, and Pedigo "are highly qualified physicians" and are considered "experts in Social Security disability evaluations." 20 C.F.R. § 404.1527(e)(2)(i). If they are capable of authoring differing opinions based upon a review of the same evidence, the ALJ's decision should have articulated a more careful explanation of his reasons for the weight assigned to each opinion. The deficiency in explaining why Dr. Pedigo's opinion was entitled to more weight neither supports a substantial evidence finding or satisfies Agency rules.

Accordingly, the Plaintiff's allegation of error is well-taken, and the Court will recommend that this case be remanded.

**VII.    CONCLUSION**

Based upon the foregoing, it is hereby **RECOMMENDED**[2] that the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 14**] be **GRANTED IN PART**, to the extent that Court recommends remand, and the Commissioner's Motion for Summary Judgment [**Doc. 16**] be **DENIED**. Upon remand, the Court RECOMMENDS that the ALJ state the weight assigned to each medical source opinion and articulate, with specificity and citation to the record, the reasons for the weight assigned to the opinions of Drs. Misra, Whitman, and Pedigo.

> Respectfully submitted,
>
>     s/ C. Clifford Shirley, Jr.
> United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).